# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

DAVID FOSTER,

                                     :

        Petitioner,                          Case No. 1:11-cv-256

                                   :             District Judge S. Arthur Spiegel
     -vs-                                    Magistrate Judge Michael R. Merz

ROBIN KNAB, Warden, Chillicothe
   Correctional Institution,

                                   :

        Respondent.

---

## REPORT AND RECOMMENDATIONS

---

      This is a habeas corpus action brought to obtain relief from a sentence of seventeen years confinement being served by Petitioner in Respondent's custody[1]. He pleads the following Grounds for Relief:

> **Ground One:** Application of Ohio's major drug offender specification to Petitioner's sentence violates the Federal Constitutional prohibition against double jeopardy as contained in the Fifth Amendment to the Federal Constitution made applicable to the states by the Fourteenth Amendment.
>
> **Supporting Facts:** Petitioner was sentenced to ten years for trafficking in heroin on a second remand to the Hamilton County Common Pleas Court on September 4, 2008. The Common Pleas court added an additional seven years for a major drug offender specification.
>
> **Ground Two:** Imposition of the major drug offender specification

---

[1] Petitioner pleads that he is serving a sentence at the Southern Ohio Correctional Facility at Lucasville, Ohio, but also pleads he is in Respondent's custody at the Chillicothe Correctional Institution (Petition, Doc. No. 1, PageID 2). The Court assumes the reference to SOCF is in error.

violates the Federal Supreme Court precedents of *Apprendi*, *Blakely* and *Rita*.

**Supporting Facts:** Petitioner was sentenced to ten years for trafficking in heroin. He was also sentenced to seven years for a major drug offender specification. This seven year sentence enhancement violates the Sixth Amendment to the Federal Constitution made applicable to the states by the Fourteenth Amendment to the Federal Constitution.

**Ground Three:** There was not sufficient evidence to convict Petitioner of the charges contained in the indictment against him in violation of the due process clause of the Fifth Amendment to the Federal Constitution made applicable to the states by the Fourteenth Amendment.

**Supporting Facts:** James Morris, Billy Harris and John Frazier entered into a conspiracy to traffic heroin in August, 2004. They planned to transport, by car, over two pounds of heroin from California to Cincinnati, where it would be sold. The plan required Frazier to deliver the heroin to Harris in Cincinnati. The proceeds from the sale of the heroin would be divided among the three men. The heroin actually transported had a street value of $700,000.

Frazier was stopped by Arkansas police officers for a traffic violation. During this stop, the heroin was discovered. Frazier agreed to cooperate with officers from the Regional Enforcement Narcotics Unit ("RENU") in an effort to implicate Harris and Morris in the plan to distribute heroin.

On or about August 18, 2004, narcotics agents in Cincinnati received a call from the Arkansas state patrol informing them that a kilo of heroin just intercepted on the highway in Arkansas was bound for Cincinnati. John Frazier, who was arrested for transporting the heroin, had agreed to cooperate with Cincinnati officers to complete a controlled delivery of the drugs. Frazier was transported to Cincinnati, and set up in a hotel room with a surveillance camera and undercover agents guarding all exits. Frazier was allowed to make a taped phone call to his contact in Cincinnati, Billy Harris, to arrange for pick up of the drugs.

Harris arrived at the hotel in a vehicle driven by Defendant, David Foster, who was neither known to Frazier nor expected by him. Harris and Defendant entered the hotel room together. Defendant did not take part in the conversation between Frazier and Harris,

except to answer 'yeah' to a question about Frazier's expenses. At some point, Frazier removed a rolled up black garbage bag from the room refrigerator and handed it to Harris, who passed it to Defendant without opening it. Defendant left the room with the bag under his arm, and was arrested in the hallway. The bag contained a kilogram of heroin.

Defendant made a statement to police indicating that Harris had asked him for a ride. He stated that there was no agreement that he would participate in distribution of the heroin, or that he would receive any of it as payment. He stated that he had sold cocaine before for Harris, but had never sold or received heroin from him.

Foster signed forms consenting to a search of his house and a separate apartment he maintained. Foster kept no clothing at the apartment. No evidence of this offense was found at his home.

**Ground Four:** Petitioner was denied effective assistance of counsel as required by the Sixth Amendment to the Federal Constitution made applicable to the states by the Fourteenth Amendment.

**Supporting Facts:** Petitioner submitted affidavits and other documents in his post conviction petition to support his contention of ineffective assistance.

An affidavit from Ronnie Jordan stated:
(1) counsel's deficient performance for failing to call Robert Parrish as a witness;
(2) witnessing a conflict between counsel and petitioner that resulted to an impasse.

An affidavit from David Howard established that:
(1) that the residence at 2408 Losantiville was rented for David Howard by his father,
(2) that the evidence presented to the jury from the Losantiville residence did not belong to the petitioner.

An affidavit from Robert Parrish provides specific information about the Petitioner and David Howard and their relationship with the Losantiville residence.

(Petition, Doc. No. 2, PageID 10-17.)  After Judge Spiegel denied Respondent's Motion to

Dismiss the Petition as time-barred (Doc. No. 15), Respondent filed a Return of Writ (Doc. No.

3

18) and Petitioner has filed a Reply (Doc. No. 20), making the case ripe for decision.

## Ground One:   Double Jeopardy

After conviction by a jury for trafficking in and possession of heroin.[2]  Petitioner was sentenced to the statutory maximum of ten years confinement, to which the judge added seven years upon classifying the Petitioner as a major drug offender. In his First Ground for Relief, Petitioner asserts this additional seven-year sentence violates his rights under the Double Jeopardy Clause.[3]

The Double Jeopardy Clause of the Fifth Amendment was held to be applicable to the States through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784 (1969).  It affords a defendant three basic protections:

> It protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense.

*Brown v. Ohio*, 432 U.S. 161, 165(1977), *quoting North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).

The test for whether two offenses constitute the same offense is "whether each offense contains an element not contained in the other."  *United States v. Dixon*, 509 U.S. 688 (1993); *Blockburger v. United States*, 284 U.S. 299 (1932).  Where two offenses are the same for *Blockburger* purposes, multiple punishments can be imposed if the legislature clearly intended to

---

[2] These convictions were later merged under Ohio's allied offenses statute, Ohio R. Code § 2941.25.
[3] The Warden argues Ground One is not cognizable under the federal Constitution, but it plainly pleads a Double Jeopardy violation.

do so. *Albernaz v. United States*, 450 U.S. 333, 344 (1981); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); and *Garrett v. United States*, 471 U.S. 773, 779 (1985).

The Hamilton County Court of Appeals considered Mr. Foster's Double Jeopardy claim as part of his first assignment of error on appeal.   It held as follows:

> Following a jury trial in 2005, defendant-appellant David Foster was found guilty  of trafficking in and possession of heroin, along with two accompanying major drug-offender ("MDO") specifications. The trial court imposed a 34-year prison term. On appeal, this court affirmed the findings of guilt, but remanded the case for resentencing under *State v. Foster*, 109 Ohio St. 3d 1 (2006).   The trial court imposed the same sentence.   Foster appealed again. In that appeal, we held that Foster's trafficking and possession convictions involved allied offenses of similar import and again remanded his case for resentencing. This time, the trial court imposed a 17-year term-10 years of mandatory confinement under the MDO sentencing provision set forth in R.C. 2929.14(D)(3)(a), and an MDO "add-on" sentence of 7 years under R.C. 2929.14(D)(3)(b).
> . . .
>
> Foster next contends that the MDO add-on violated the prohibition against double jeopardy. He argues that since the jury's MDO finding resulted in a ten-year mandatory sentence under R.C. § 2929.14(D)(3)(a), the add-on penalty in R.C. 2929.14(D)(3)(b) constituted multiple punishment for the same crime.
>
> Not every imposition of multiple punishments violates double jeopardy. The legislature may allow for cumulative punishment for the same conduct. *State v. Gonzales,* 151 Ohio App. 3d, 160, 2002-Ohio-4937, 783 N.E. 2d 903, ¶ 40. Our review of this issue is limited to ensuring that the trial court did not exceed its statutory sentencing authority. *Id.*, citing *State v. Moss* (1982), 69 Ohio St.2d 515, 518,433 N.E.2d 181. It did not. Foster's sentence fell within the statutory range set forth by the legislature. There was no double-jeopardy violation.

*State v. Foster,* Case No. C-080929 (Ohio App. 1ˢᵗ Dist. Aug. 5, 2009)(unreported, copy at Motion to Dismiss, Doc. No. 8-3, Ex. 75, PageID 664-665).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Because the Hamilton County Court of Appeals decided the double jeopardy claim on the merits, its decision must be this Court's point of departure.

The Warden notes that the court of appeals relied on its own prior precedent, *State v. Gonzales*, 151 Ohio App. 3d 160 (2002), for its Double Jeopardy conclusion. (Return of Writ, Doc. No. 18, PageID 1542-1543.) *Gonzales* in turn relied on *Missouri v. Hunter*, 459 U.S. 359 (1983). The Warden also cites *Smith v. Sowders*, 848 F.2d 735 (6ᵗʰ Cir. 1988). (Return of Writ, Doc. No 18, PageID 1543.)

Petitioner replies that "just because the state legislature has authorized two statutes that effectively punished Petitioner for the same crime does not mean that such statutes are constitutional. . ." (Reply, Doc. No. 20, PageID 1598).

The question of the meaning of the Ohio Revised Code sections in question – the intent of the legislature as to cumulative punishment – is of course a question of state law on which this Court is bound by state court interpretation. However, a plain reading of the statutes in questions supports the court of appeals' interpretation: Ohio R. Code § 2929.14(D)(3)(b) permits imposition ("may impose") of an additional definite term of years if the trial court finds: (1) the

factors indicating the likelihood of recidivism outweigh those pointing to a lesser risk (§ 2929.14(D)(2)(a)(iv), and (2) and that a more severe sentence is necessary to avoid demeaning the seriousness of the offense because it is more serious than the conduct normally constituting the offense (§ 2929.14(D)(2)(a)(v)).

Petitioner has not shown how the court of appeals' decision is contrary to or an objectively unreasonable application of United States Supreme Court precedent, particularly *Missouri v. Hunter, supra*. He notes that "the United States Supreme Court has yet to determine whether the double jeopardy clause bars an enhancement under Ohio's Major Drug Specification." (Reply, Doc. No. 20, PageID 1598.) But that has the argument backwards. Whether a state court decision is contrary to or an objectively unreasonable application of clearly established law must be decided by examining the Supreme Court law at the time the state court acted. Petitioner cannot point, as he admits, to Supreme Court Double Jeopardy precedent in his favor. Without that precedent, he cannot prevail on Ground One and it should be dismissed with prejudice.


**Ground Two:   The Major Drug Offender Specification and *Blakely v. Washington***


In his Second Ground for Relief, Petitioner asserts that imposition of the seven-year consecutive sentence violated his due process rights as enunciated in *Blakely v. Washington*, 542 U.S. 296 (2004).

In *Blakely*, the Supreme Court held any fact which increases the sentence beyond a legislatively-mandated guideline, even if within a statutory maximum for the offense, must be pled as an element in the indictment and proved to the jury beyond a reasonable doubt. *Blakely* rendered portions of the Ohio sentencing law, adopted in 1996, unconstitutional and the Ohio

Supreme Court so held in *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E. 2d 470 (2006). *Foster* was handed down before the court of appeals decided this case the first time it was appealed, and the court reversed on the basis of *Foster*. It held:

> [*P21] In his fourth assignment of error, Foster argues that the trial court erred in imposing a sentence for each MDO specification and ordering that his prison term for trafficking be consecutive to his prison term for possession based on facts neither found by a jury nor admitted by him. In support of his argument, Foster cites his Sixth Amendment right to trial by jury and *Blakely v. Washington.* [citation omitted]

> [*P22] Recently, in *State v. Foster*, [citation omitted], the Ohio Supreme Court held that certain sections of Ohio's sentencing code violated the Sixth Amendment and the Supreme Court's holding in *Blakely*. Among the sections found unconstitutional was R.C. 2929.14(E)(4), which requires judicial findings before the imposition of consecutive sentences. *Id.* at ¶ 3 of the syllabus. Further, the court determined that the provision requiring judicial findings before the imposition of a sentence for a MDO specification was unconstitutional. *Id.* at ¶ 5 of the syllabus. The *Foster* court concluded that these sentencing provisions violated the Sixth Amendment because they required a judge to engage in fact-finding before imposing a sentence greater than the maximum term authorized by a jury verdict or a defendant's admissions. *Id.* at ¶ 83.

> [*P23] But the *Foster* court held that the unconstitutional provisions could be severed. Having severed the provisions, the court determined that judicial fact-finding is no longer required prior to the imposition of a sentence within the basic prison ranges of R.C. 2929.14(A), the imposition of consecutive sentences, or the imposition of an additional penalty for major-drug-offender specifications. *Id.* at ¶¶ 2, 4, and 6 of the syllabus.

> [*P24] Here, because the trial court's imposition of consecutive prison terms for possession and trafficking, as well as the imposition of a prison term for each MDO specification, was based on an unconstitutional statute, we hereby vacate those sentences and remand the cause for resentencing in light of *Foster*. *Id.* at ¶ 104. But we emphasize that the trial court may impose any sentence within the applicable statutory ranges, including consecutive sentences. The fourth assignment of error is sustained.

*State v. [David] Foster*, Case No. C-050378, 2006 Ohio 1567, 2006 Ohio App. LEXIS 1492 (Ohio App. 1st Dist. Mar. 31, 2006). The court of appeals reached the same conclusion on Petitioner's direct appeal after re-sentencing, noting that "*Foster* explicitly held that R.C. 2929.[14](D)(3)(b) judicial factfinding is not required before judicial imposition of additional penalties for major drug offender specifications." *State v. [David] Foster*, Case No. C-060720 (Ohio App. 1st Dist. June 27, 2007) (unreported, copy at Motion to Dismiss, Doc. No. 8-2, Ex. 39, PageID 448). That is because the Ohio Supreme Court's chosen remedy for the *Blakely* violation in Ohio's sentencing law was to sever the unconstitutional sections, including Ohio R. Code § 2929.14(D)(3)(b). Thus no factfinding, by a jury or a judge, was necessary under that statutory section to impose a sentence on someone found to be a major drug offender within the statutory maximum of twenty years. The federal constitutionality of the Foster resolution of Ohio's Blakely violation was confirmed by the Sixth Circuit in *Ruhlman v. Brunsman*, 664 F.3d 615 (6th Cir. 2011).

In his Reply, Petitioner seems to be arguing not about the findings previously required by Ohio R. Code § 2929.14(D)(3)(b), but about his characterization as a major drug offender. That is, he seems to be saying the jury had to find in a verdict that Petitioner was a major drug offender (Reply, Doc. No. 20, PageID 1603).

That is not a correct application of *Blakely*. Ohio law, Ohio R. Code § 2929.01(X), defines as a major drug offender anyone who is found guilty of possession, sale, or offer to sell particular quantities of controlled substances; for heroin, the amount is 250 grams. That question of fact – did Foster possess at least 250 grams of heroin – was submitted to the jury and they found that amount beyond a reasonable doubt. Once the jury had made that finding of fact, there were no more factual issues to decide in order for Mr. Foster to fit the statutory definition of major drug

offender.   That is, when a jury has found someone to have possessed more than 250 grams of heroin, that person is as a matter of law a major drug offender.

Ground Two is without merit and should be dismissed with prejudice.

## Ground Three:   Insufficient Evidence

In his Third Ground for Relief, Petitioner asserts he was convicted on constitutionally insufficient evidence.   The parties are in agreement that this claim is cognizable under the United States Constitution, but they argue over whether the conviction actually meets the constitutional standard.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.   *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358   (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc).   In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.   *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .   This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).   This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E. 2d 492 (1991), relied on by

the court of appeals in this case. Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008).

Just last week, the United States Supreme Court unanimously reaffirmed this two level of

deference standard:

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010) (slip op., at 5)).

*Coleman v. Johnson*, 566 U.S. ___, 2012 U.S. LEXIS 3943, 1-2 (U.S. May 29, 2012)(*per curiam*).

The facts as found by the Hamilton County Court of Appeals are as follows:

> [*P3]   In August 2004, James Morris, Billy Harris and John Frazier planned for Frazier to transport, by car, over two pounds of heroin from California to Cincinnati, where it would be sold. The plan required Frazier to deliver the heroin to Harris in Cincinnati. The proceeds from the sale of the heroin would be divided among the three men. The heroin actually transported had a street value of $ 700,000.

> [*P4]   While transporting the heroin, Frazier was stopped by Arkansas police officers for a traffic violation. During this stop, the heroin was discovered. Frazier agreed to cooperate with officers from the Regional Enforcement Narcotics Unit ("RENU") in an effort to implicate Harris and Morris in the plan to distribute heroin. Once in Cincinnati, Frazier telephoned Harris and arranged to have Harris meet him at a local hotel for delivery of the heroin.

> [*P5]   Harris then contacted defendant-appellant David Foster to drive him to the hotel. Foster agreed. With RENU officers in surveillance, Harris arrived at the hotel in Foster's car. Harris and Foster were supposed to meet Frazier in a specific hotel room. Using a hidden camera, RENU officers, stationed in an adjoining room, were able to visually and audibly record the events that transpired in Frazier's room.

[*P6]   During the exchange of heroin in the hotel room, Frazier asked Harris when he could expect to receive expense money. Harris stated that it could be as soon as that evening. Foster affirmed Harris's answer by saying "yeah." Frazier then reached into a small refrigerator, removed a plastic trash bag, and handed it to Harris. Harris then handed the bag to Foster. Frazier testified at trial that Foster looked into the bag and then left the room, while Harris remained behind. Upon leaving the room, Foster was immediately arrested by RENU officers, who recovered the heroin. The officers then entered Frazier's room and arrested Harris and Frazier.

. . .

[*P20]   Our review of the record convinces us that the state presented sufficient evidence from which the jury could have found that it had proved all the essential elements of the crimes for which Foster was convicted. We further hold that, in resolving the conflicts in the evidence, the jury did not lose its way so that a new trial is required.   The third assignment of error is overruled.

*State v. Foster*, Case No. C-050378, 2006 Ohio 1567, 2006 Ohio App. LEXIS 1492 (Ohio App. 1st Dist. Mar. 31, 2006).

In arguing that this evidence is not sufficient, Petitioner notes that he never admitted to any present-day drug activity (Reply, Doc. No. 20, PageID 1608).   He notes that he cannot be found guilty of the present offense because of past bad acts, but points to no admission in evidence of past bad acts which were purportedly used to convict him. *Id.* at 1609.   He argues that his "yeah" comment about when the transporter of the drugs would get paid is ambiguous.  *Id.* Then he argues, without citation to any record evidence, that the drug dealing supplies found at the apartment in his name were not his, but his son's, who is presently also in prison for drug dealing. *Id.* at PageID 1609-1610.   What all of this argument fails to mention is that Petitioner was arrested in actual possession of a kilogram of heroin in a bag which he took possession of from one of the co-conspirators, looked into, then left the meeting place to which he had driven another of the co-conspirators. In other words, he was caught "red handed" with more than four times the amount

of heroin needed for conviction as a major drug offender under Ohio law. Plainly, the evidence against him was sufficient under the Due Process Clause and the court of appeals holding to that effect is neither contrary to nor an unreasonable application of *Jackson v. Virginia, supra.* The Third Ground for Relief should be dismissed with prejudice.

## Ground Four:   Ineffective Assistance of Trial Counsel

In his Fourth Ground for Relief, Petitioner claims he received ineffective assistance of trial counsel when his trial counsel: (1) failed to withdraw after he was involved in a heated confrontation with Petitioner which resulted in an impasse, and (2) failed to present David Howard, Petitioner's son, and Robert Parrish to bolster the claim that the Losantiville apartment, rented by Petitioner and containing drug-dealing supplies, actually belonged to Howard, also a drug dealer.

These are the only claims of ineffective assistance of trial counsel actually made in the Petition. In his Reply, Petitioner quotes from the court of appeals' decision on his fifth assignment of error on his first direct appeal that court's conclusion that there was no ineffective assistance of trial counsel when trial counsel "failed to raise the issue of allied offenses and because he failed to object to the imposition of consecutive sentences and the MDO sentences" (Reply, Doc. No. 20, PageID 1610.) Respondent quoted the same language in the Return of Writ (Doc. No. 18, PageID 1581). Those claims, however, are not made in the Petition and are therefore not before the Court. Indeed, Petitioner's counsel does not argue them in the Reply.

Respondent asserts that some claims of ineffective assistance of trial counsel actually made in the Petition were procedurally defaulted because they were first raised in Mr. Foster's first

petition for post-conviction relief under Ohio R. Code § 2953.21, that petition was dismissed by the trial court as untimely, and the court of appeals affirmed that conclusion.

In his first petition for post-conviction relief, Mr. Foster claimed he received ineffective assistance of trial counsel from his trial attorney, Harold Freeman, in a number of different ways. The only one of these which appears to be repeated in the Petition is the failure to call Robert Parrish as a witness in the suppression hearing (Compare Post-Conviction Petition, Exhibit to Motion to Dismiss, Doc. No. 8-1, PageID 305 with Petition, Doc. No. 1, PageID 17).

The procedural default defense in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones,* 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright,* 433 U.S. at 87.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir.

2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,* 785 F.2d at 138.

Petitioner concedes that Ohio has a procedural rule applicable to filing of petitions for post-conviction relief, to wit, a statute of limitation which requires that they be filed within 180 days of the filing of the record on direct appeal (Reply, Doc. No. 20, PageID 1599). He also concedes that this rule was actually enforced against him by the Common Pleas Court and the court of appeals and that the rule in question is an adequate and independent state ground of decision. *Id.*

However, Petitioner asserts he can show cause and prejudice excusing his procedural default.

> While Petitioner filed the document pro se, he was left at the hands
> of the prison system and their mail program to timely deliver his
> legal mail. Unfortunately for him, the Ohio Department of
> Rehabilitation and Corrections is infamous for its mail delivery
> system. The interference of prison officials with the inmate mail
> system makes compliance with the procedural rule of timeliness
> impracticable. As such, Petitioner was prejudiced because his
> petition was dismissed due to untimeliness.

(Reply, Doc. No. 20, PageID 1600.)   No evidence is offered to prove that the officials of the particular prison where Mr. Foster was incarcerated at the time actually interfered with the filing of this particular piece of inmate mail.   Instead, Petitioner essentially asks this Court to take judicial notice of a pattern of interference by calling the ODRC system "infamous."   No source for this conclusion is noted.   To accept Petitioner's allegations in the absence of any evidence would be to undercut completely Ohio's time limitation on post-conviction petitions because most of them, in this Court's experience, are filed *pro se* by incarcerated persons.   While the Court would be bound to consider evidence of prison interference with mail as a factor supporting excusing cause, it is not bound to accept bare allegation.   Therefore the claim of ineffective assistance of trial counsel made by Petitioner in his first petition for post-conviction relief that is repeated in the Petition here – the failure to call Robert Parrish as a witness at the suppression hearing -- are procedurally defaulted.

Petitioner separately argues that the ineffective assistance of trial counsel claims made in his second post-conviction are not procedurally defaulted (Reply, Doc. No. 20, PageID 1600). Although they were dismissed as raised in that petition on *res judicata* grounds, he says they are not barred here because they were raised on direct appeal.   *Id.* However, the ineffective assistance of trial counsel claims raised on direct appeal are not the ones pled in the Petition.   Rather, the claims made in the second post-conviction petition which are repeated in the Petition here relate to

17

David Howard's responsibility for the Losantiville apartment, as disproving his father's responsibility. (Compare Second Post-Conviction Petition, Exhibit 56 to Motion to Dismiss, Doc. No. 8-3, PageID 536, ¶ 25 with Petition, Doc. No. 1, PageID 17). The second Post-Conviction Petition was filed January 31, 2007 (see PageID 528). The State opposed the second petition on *res judicata* grounds, but also on grounds that the new factual material relied on was not newly discovered in the sense required by Ohio R. Code § 2953.23 for second or successive post-conviction petitions (Motion to Dismiss, Ex. 58 to Motion to Dismiss, Doc. No. 8-3, PageID 561.) The Common Pleas Court accepted both grounds for dismissal (Order, Ex. 58 to Motion to Dismiss, Doc. No. 8-3, PageID 563).

Applying the Maupin analysis here, Ohio has a rule that second or successive petitions for post-conviction relief must show that the factual material supporting them is newly-discovered. No such showing was made here and how could it be? Petitioner and his son certainly knew what the son could testify to about the use of the Losantiville apartment at the time of trial. If that evidence was proffered to Mr. Freeman and not used by him, there is no good reason suggested by the record why it could not have been made a part of the first post-conviction petition. The Common Pleas court enforced this Ohio rule against Mr. Foster, it is an adequate and independent state ground for decision, and no excusing cause and prejudice has been offered.

Therefore all claims of ineffective assistance of trial counsel actually made in the Petition were procedurally defaulted in various ways in the state courts and the Fourth Ground for Relief should be dismissed with prejudice.

**Conclusion**


Based on the foregoing analysis, the Petition should be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and this Court should certify to the Court of Appeals that any appeal is not taken in objective good faith and may therefore not proceed *in forma pauperis*.

June 7, 2012.

s/ **Michael R. Merz**
United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).