# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

DAVID FOSTER,

:

    Petitioner,

Case No. 1:11-cv-256

:

    -vs-

District Judge S. Arthur Spiegel
Magistrate Judge Michael R. Merz

ROBIN KNAB, Warden, Chillicothe
  Correctional Institution,

:

    Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on Petitioner's Objections (Doc. No. 24) to the Report and Recommendations which recommended the Petition be dismissed with prejudice (Doc. No. 21). Judge Spiegel has recommitted the case to the Magistrate Judge for reconsideration in light of the Objections (Doc. No. 25).

Petitioner pleads the following Grounds for Relief:

> **Ground One:** Application of Ohio's major drug offender specification to Petitioner's sentence violates the Federal Constitutional prohibition against double jeopardy as contained in the Fifth Amendment to the Federal Constitution made applicable to the states by the Fourteenth Amendment.
>
> **Ground Two:** Imposition of the major drug offender specification violates the Federal Supreme Court precedents of *Apprendi*, *Blakely* and *Rita*.
>
> **Ground Three:** There was not sufficient evidence to convict Petitioner of the charges contained in the indictment against him in violation of the due process clause of the Fifth Amendment to the

1

> Federal Constitution made applicable to the states by the Fourteenth
> Amendment.
>
> **Ground Four:** Petitioner was denied effective assistance of counsel as required by the Sixth Amendment to the Federal Constitution made applicable to the states by the Fourteenth Amendment.

(Petition, Doc. No. 2, PageID 10-17[1].)

## Ground One: Double Jeopardy

After conviction by a jury for trafficking in and possession of heroin[2]. Petitioner was sentenced to the statutory maximum of ten years confinement, to which the judge added seven years upon classifying the Petitioner as a major drug offender. In his First Ground for Relief, Petitioner asserts this additional seven-year sentence violates his rights under the Double Jeopardy Clause.

In the Report, this judge noted that the Hamilton County Court of Appeals had decided this constitutional issue and that, under 28 U.S.C. § 2254(d)(1), a federal habeas court was required to defer to that decision unless it was objectively unreasonable. The Objections accept those two propositions of law. However, Petitioner argues:

> [B]ecause the United States Supreme Court has not yet determined whether the double jeopardy clause bars an enhancement under Ohio's major drug specification it cannot be found that the statute was reasonably applied to Petitioner. Again, Petitioner would reiterate that simply because the law was passed by the Ohio state legislature, does not mean that it complies with the constitution.

(Objections, Doc. No. 24, PageID 1646.)

---

[1] The "supporting facts" as pled in the Petition are set forth verbatim in the Report.
[2] These convictions were later merged under Ohio's allied offenses statute, Ohio R. Code § 2941.25.

Petitioner is correct that (1) passage by the state legislature does not guarantee constitutionality and (2) the United States Supreme Court has never held that Ohio's major drug offender statute is constitutional. Neither of those propositions supports granting relief here. Whether a state court decision is contrary to, or an objectively unreasonable application of, clearly established Supreme Court precedent must be decided by examining the Supreme Court law at the time the state court acted. In determining whether a state court decision is contrary to or an unreasonable application of clearly established Supreme Court precedent, a federal court may look only to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision. *Goodell v. Williams*, 643 F.3d 490 (6th Cir. 2011), *citing Lockyer v. Andrade*, 538 U.S. 63, 71 (2003), and *Williams*, 529 U.S. at 412. If the Supreme Court has not "broken sufficient legal ground to establish [a]… constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar" under either the contrary to or unreasonable application standard. *Fields v. Howes*, 617 F.3d 813 (6th Cir. 2010), *citing Williams v. Taylor*, 529 U.S. 362 at 381 (2000). A habeas petitioner cannot win unless he has a Supreme Court holding in his favor; absence of a holding in favor of the State is insufficient.

**Ground Two:   The Major Drug Offender Specification and *Blakely v. Washington***

In his Second Ground for Relief, Petitioner asserts that imposition of the seven-year consecutive sentence on the major drug offender specification violated his due process rights as enunciated in *Blakely v. Washington*, 542 U.S. 296 (2004). In *Blakely*, the Supreme Court held any fact which increases the sentence beyond a legislatively-mandated guideline, even if within a

statutory maximum for the offense, must be pled as an element in the indictment and proved to the jury beyond a reasonable doubt.

Ohio Revised Code § 2929.01(W), defines as a major drug offender anyone who is found guilty of possession, sale, or offer to sell particular quantities of controlled substances; for heroin, the amount is 250 grams. That question of fact – did Foster possess at least 250 grams of heroin? – was submitted to the jury and they returned a verdict expressly finding that amount beyond a reasonable doubt. Once the jury had made that finding of fact, there were no more factual issues to decide in order for Mr. Foster to fit the statutory definition of major drug offender. That is, when a jury has found someone to have possessed more than 250 grams of heroin, that person is in Ohio as a matter of law a major drug offender. Because the jury made the only finding of fact necessary to qualify Petitioner as a major drug offender, the Report recommended dismissing this Ground for Relief.

Petitioner objects:

> Petitioner admits that the jury did find beyond a reasonable doubt that the amount of heroin in his possession exceeded 250 grams. However, Petitioner submits that that fact alone is not enough to find him to be a major drug offender in order to add on to his sentence. The jury was never asked to find Petitioner to be a major drug offender. They could have been asked on their verdict forms, but they were not. In order to comply with the Sixth Amendment, this question should have been posed to the jury and not left to the judiciary to decide.

(Objections, Doc. No. 24, PageID 1647.)

Petitioner cites no authority for the proposition that, once a jury has made the only finding of fact necessary to support a conclusion of law, the jury must also make the conclusion of law to satisfy the Sixth Amendment. Nor does Petitioner point to any place in the record where he

4

objected to the form of the verdict. In his Brief on appeal, he objected to the judge's making the factual findings required by Ohio Revised Code § 2929.14(D)(3), not that the trial judge made the conclusion of law that, upon conviction for 250+ grams of heroin, Foster was a major drug offender. (Appellant's Brief, Return of Writ, Doc. No. 8, PageID 109-110.) The omitted jury findings complained of on appeal have nothing to do with the major drug offender classification, but would have been under portions of the Ohio sentencing statute later held unconstitutional and severed in *State v. Foster*, 109 Ohio St. 3d 1, 29 (2006).

### Ground Three: Insufficient Evidence

In his Third Ground for Relief, Petitioner asserts he was convicted on constitutionally insufficient evidence.

The jury, correctly instructed on the elements and the burden of proof, found beyond a reasonable doubt that Foster possessed more than 250 grams of heroin. The Hamilton County Court of Appeals affirmed that holding on the following factual findings:

> [*P3] In August 2004, James Morris, Billy Harris and John Frazier planned for Frazier to transport, by car, over two pounds of heroin from California to Cincinnati, where it would be sold. The plan required Frazier to deliver the heroin to Harris in Cincinnati. The proceeds from the sale of the heroin would be divided among the three men. The heroin actually transported had a street value of $ 700,000.
>
> [*P4] While transporting the heroin, Frazier was stopped by Arkansas police officers for a traffic violation. During this stop, the heroin was discovered. Frazier agreed to cooperate with officers from the Regional Enforcement Narcotics Unit ("RENU") in an effort to implicate Harris and Morris in the plan to distribute heroin. Once in Cincinnati, Frazier telephoned Harris and arranged to have Harris meet him at a local hotel for delivery of the heroin.

[*P5] Harris then contacted defendant-appellant David Foster to drive him to the hotel. Foster agreed. With RENU officers in surveillance, Harris arrived at the hotel in Foster's car. Harris and Foster were supposed to meet Frazier in a specific hotel room. Using a hidden camera, RENU officers, stationed in an adjoining room, were able to visually and audibly record the events that transpired in Frazier's room.

[*P6] During the exchange of heroin in the hotel room, Frazier asked Harris when he could expect to receive expense money. Harris stated that it could be as soon as that evening. Foster affirmed Harris's answer by saying "yeah." Frazier then reached into a small refrigerator, removed a plastic trash bag, and handed it to Harris. Harris then handed the bag to Foster. Frazier testified at trial that Foster looked into the bag and then left the room, while Harris remained behind. Upon leaving the room, Foster was immediately arrested by RENU officers, who recovered the heroin. The officers then entered Frazier's room and arrested Harris and Frazier.
. . .

[*P20] Our review of the record convinces us that the state presented sufficient evidence from which the jury could have found that it had proved all the essential elements of the crimes for which Foster was convicted. We further hold that, in resolving the conflicts in the evidence, the jury did not lose its way so that a new trial is required. The third assignment of error is overruled.

*State v. Foster*, Case No. C-050378, 2006 Ohio 1567, 2006 Ohio App. LEXIS 1492 (Ohio App. 1st Dist. Mar. 31, 2006). As the Report notes, state court findings on the sufficiency of the evidence are entitled to two levels of deference in habeas court. (Report, Doc. No. 21, PageID 1626-27, *citing Coleman v. Johnson,* 566 U.S. ___, 132 S. Ct. 2060, 182 L. Ed. 2d 978 (2012), and *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009).

In his Reply and again in the Objections, Petitioner argues at length (four pages in the Objections) about the probative value of much of the corroborating evidence submitted by the State. However, the core of the State's case, as noted in the Report, is that Petitioner was arrested

in actual possession of a kilogram of heroin. The drugs were in a bag of which he took possession from one of the co-conspirators, looked into, then left the meeting place to which he had driven another of the co-conspirators (Report, Doc. No. 21, PageID 1628.) In other words, he was caught "red handed" with more than four times the amount of heroin needed for conviction as a major drug offender under Ohio law.

In his Objections, Petitioner does not deny that he was arrested in actual possession of the kilogram of heroin. Instead, he says "[c]ontrary to Magistrate Judge Merz's report, there is no evidence that Petitioner looked in the bag that ultimately was found to contain heroin." (Objections, Doc. No. 24, PageID 1653). As quoted above, the court of appeals found "Frazier testified at trial that Foster looked into the bag and then left the room. . ." That finding of fact is entitled to complete deference in this Court unless Petitioner proves it is wrong "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Petitioner offers no rebutting citation to the record. Mr. Frazier's relevant trial testimony, explaining what the jury is seeing on the surveillance video, is:

> A. I gave the bag to Mr. Harris and he passed it to Mr. Foster. Mr. Foster is taking a quick look in the bag and opening it back up.
>
> Q. Now, who is the guy that got out of the seat and walked out here that we could see with the bag?
>
> A. That is Mr. Foster. Sorry.

(Trial Tr. Doc. No. 8-10, PageID 1110.) Petitioner's statement in his Objections that "there is no evidence Petitioner looked in the bag" is untrue.

## Ground Four:  Ineffective Assistance of Trial Counsel

In his Fourth Ground for Relief, Petitioner claims he received ineffective assistance of trial counsel when his trial counsel: (1) failed to withdraw after he was involved in a heated confrontation with Petitioner which resulted in an impasse, and (2) failed to present David Howard, Petitioner's son, and Robert Parrish to bolster the claim that the Losantiville apartment, rented by Petitioner and containing drug-dealing supplies, actually belonged to Howard, also a drug dealer.

The Report concluded that the claims of ineffective assistance of trial counsel made in the first post-conviction petition under Ohio Revised Code § 2953.21 are procedurally defaulted by Foster's failure to file that petition within the time limits set by Ohio law (Report, Doc. No. 13, PageID 1630-1631). In his Reply and again in his Objections, Foster concedes that the time limit exists and was enforced against him by both the Common Pleas Court and the court of appeals (Reply, Doc. No. 20, PageID 1599; Objections, Doc. No. 24, PageID 1655). As he did in his Reply, Petitioner asserts he can prove excusing cause of interference by state officials with his filing. (Objections, Doc. No. 24, PageID 1655). However, as proof he asserts:

> It is common knowledge that inmate mail is not given directly to the inmate from the post office. Rather the mail comes to the institution where it is held in the mailroom to be screened and then delivered to the inmate, thus adding several days to the normal mailing schedule.

*Id.* at PageID 1656.

As noted in the Report, a federal court cannot take judicial notice of a fact just because a litigant asserts it is "common knowledge."[3] See Fed. R. Evid. 201. Moreover, the delay posited

---

3 In the Reply, Petitioner asserted the mail system of the ODRC was "infamous." (Reply, Doc.

in the Objections is about mail coming into the prisons but does not explain delay in getting something – like a petition for post-conviction relief – out of the prison. The first post-conviction petition was filed December 7, 2005 (Motion to Dismiss, Ex. 15). After the Common Pleas Court dismissed it as untimely, Foster claimed that it was timely under the so-called mailbox rule[4], to wit, that he had mailed it on the date due (Motion to Dismiss, Ex. 20, PageID 245; Ex. 22, PageID 250). He made no claim that prison authorities had interfered with his filing. In any event the 180th day after the trial transcript was filed in the court of appeals was not December 7, 2005, but November 27, 2005 (Motion to Dismiss, Ex. 19, PageID 242). In short, the mailbox rule does not apply in Ohio courts and even if it did, Foster did not mail the petition until ten days after it was due.

Petitioner separately argues that the ineffective assistance of trial counsel claims made in his second post-conviction are not procedurally defaulted (Reply, Doc. No. 20, PageID 1600). They were dismissed in the Ohio courts as barred by *res judicata* which the Report found was an adequate and independent state ground of decision. In his Objections, Petitioner claims there is no *res judicata* bar because he raised ineffective assistance of trial counsel on direct appeal (Objections, Doc. No. 24, PageID 1656). However, raising some claims of ineffective assistance of trial counsel on direct appeal does not preserve all possible claims of ineffective assistance of

---

No. 20, PageID 1600).
4 An incarcerated person "files" a notice of appeal when he or she deposits it with prison authorities for forwarding to the Clerk. *Houston v. Lack,* 487 U.S. 266 (1988); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). The same rule applies to filing a petition for writ of habeas corpus or §2255 motion to avoid the statute of limitations. *Towns v. United States*, 190 F.3d 468 (6th Cir. 1999). The mailbox rule is not binding on the States. *Maples v. Stegall*, 340 F.3d 433 (6th Cir. 2003); *Adams v. LeMaster,* 223 F.3d 1177, 1183 (10th Cir. 2000). Ohio has refused to adopt the mailbox rule. *State, ex rel Tyler, v. Alexander*, 52 Ohio St. 3d 84 (1990)(noting that *Houston* is not a constitutional decision and finding its logic unpersuasive.)

trial counsel to be raised later. There are, of course, many ways in which trial counsel can fail to provide effective assistance. If a defendant could preserve all such claims for post-conviction by raising just some of them on direct appeal, Ohio criminal *res judicata* doctrine would be gutted as would the federal exhaustion doctrine. In any event, Petitioner cites no Ohio authority for the proposition that one can preserve all such claims for post-conviction by raising some of them on direct appeal. And the Sixth Circuit has repeatedly held that Ohio's criminal *res judicata* doctrine is an adequate and independent state ground of decision. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F. 3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994); *Van Hook v. Anderson*, 127 F. Supp. 2d 899 (S.D. Ohio 2001).

The state courts also found Foster's testimony from his son, David Howard, that the drug-associated items found in the Losantiville apartment were Howard's rather than Foster's was not newly-discovered. The Report accepted that as an adequate and independent state ground for decision. Foster objects that "[s]imply being related to someone does not mean that you know what they have to say or what they would testify to." (Objections, Doc. No. 24, PageID 1656.) True enough, but there is also a due diligence requirement with respect to newly-discovered evidence. No showing was offered to the state courts, nor is any suggested to this Court, of any effort made by Foster to find out in timely fashion what his son would testify to.

## Conclusion

Having reconsidered the case in light of the Objections, the Magistrate Judge again

respectfully recommends that the Petition be dismissed with prejudice, that Petitioner be denied a certificate of appealability, and that the Court certify any appeal would not be taken in objective good faith.

August 30, 2012.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).